UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALIN D. SUTTON<br><br>Plaintiff,<br>v.<br><br>MICHAEL J. ASTRUE<br><br>Defendant. | Civil No. 11-0536-JLS(WVG)<br><br>REPORT AND RECOMMENDATION:<br><br>DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. #15)<br><br>GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #17) |

I

INTRODUCTION

Plaintiff Rosalin D. Sutton (hereinafter "Plaintiff"), filed a Complaint for Judicial Review and Remedy On Administrative Decision under the Social Security Act [42 U.S.C. § 405(g)]. Defendant Michael J. Astrue (hereinafter "Defendant"), filed an Answer to the Complaint and the administrative record (hereafter "Tr."), pertaining to this case. Plaintiff has filed a Motion for Summary Judgment. Defendant has filed an Opposition to Plaintiff's Motion for Summary Judgment and a Cross-Motion for Summary Judgment.

The Court, having reviewed Plaintiff's Motion for Summary Judgment, Defendant's Opposition to Plaint iff's Motion for Summary Judgment, Defendant's Cross-Motion for Summary Judgment, and the administrative record filed by Defendant, hereby finds that Plaintiff is not entitled to the relief requested and therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.

II

PROCEDURAL HISTORY

On February 2, 2006, Plaintiff filed applications for Supplemental Security Income benefits and Disability Insurance Benefits, alleging that she was disabled since September 23, 2004. The Commissioner of Social Security denied her application initially and upon reconsideration. On February 12, 2009, a hearing was held at which Plaintiff appeared with counsel and testified before an Administrative Law Judge ("ALJ"). On July 27, 2009, the ALJ found that Plaintiff was not disabled. The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review. (Tr. 1-3).

III

ALJ'S FINDINGS[1/]

The ALJ made the following pertinent findings:

1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2004.

2. Plaintiff has not engaged in substantial gainful activity after her alleged onset date.

3. (Plainfiff) has the following severe impairment: seizures, status post-cerebral vascular accident.

[1/]The ALJ's findings are found at Tr. 16-21.

4. (Plaintiff) does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. No physician has opined that (Plaintiff)'s condition meets or equals any listing, and the state agency physicians have opined that it does not.

5. After careful consideration of the entire record, the ALJ finds that (Plaintiff) has the residual functional capacity to perform the full range of light work. (Plaintiff) could lift and carry twenty pounds occasionally and ten pounds frequently due to having slight weakness in her left upper extremity, stand and walk six hours of an eight-hour workday and sit six hours of an eight-hour workday. (Plaintiff) could stoop, bend, reach, squat, kneel and crawl occasionally. (Plaintiff) must avoid unprotected water, extreme heat, hazardous machinery, driving and heights as defined in 20 CFR 404.1567(b) and 416.967(b).

In making this finding, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The ALJ also considered opinion evidence.

In considering (Plaintiff)'s symptoms, the ALJ must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce (Plaintiff)'s pain or other symptoms.

Second, once an underlying physical or mental impairment that could reasonably be expected to produce (Plaintiff)'s pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence, and limiting effects of (Plaintiff's) symptoms to determine the extent to which they limit (Plaintiff's) ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record.

John R. Morse, M.D., a medical expert and board certified internist, testified to his thorough review of the medical records and (Plaintiff)'s testimony. Dr. Morse testified (Plaintiff) has a history of seizures starting in 2004. Dr. Morse testified (Plaintiff)'s seizures became more frequent when she stopped being consistent taking her medication. Dr. Morse testified the (Plain-

tiff)'s seizures became controlled when she was consistent taking her medication.

(Plaintiff) has a history of seizures, status post cerebrovascular accident after she had hemorrhage to the brain. On October 3, 2006, Sarah L. Maze, M.D., reported (Plaintiff)'s first seizure occurred six months after her stroke. Dr. Maze said (Plaintiff) was not taking her seizure medication regularly when her last seizure occurred. Because the cerebrovascular accident caused (Plaintiff) to have very slight weakness in the left upper extremity, Dr. Maze performed a physical examination and determined an assistive device was not required. (Plaintiff)'s reflexes and gait was (sic) normal.

On January 29, 2007. The University of Southern California Medical Center (sic)(University of California San Diego) (UCSD) reported the results of cranial nerve testing (which) revealed (Plaintiff)'s nerves were intact. (Plaintiff) had normal shoulder shrug bilaterally. The results of the motor test revealed (Plaintiff) had a normal bulk and tone in all four extremities. (Plaintiff) had a full range of motion in all muscle groups in her upper extremities. Although she had some pain in her elbow, x-rays showed no discoloration or joint effusion in the elbow.

In August 2007, (Plaintiff) was doing well since taking Keppra.[2] In October 2007, (Plaintiff) was taking good care of herself. (Plaintiff) had good control of her gout and she had no seizures for a while. (Plaintiff) was walking for exercise, drinking a lot of water and she was eating smaller meals. On July 24, 2008, treatment records from Mid-City Community Clinic reported (Plaintiff) had her last seizure in August 2007. On September 18, 2008, treatment records from Mid-City Community Clinic reported (Plaintiff) was off her medications for six months.

After careful consideration of the evidence, the (ALJ) finds that (Plaintiff)'s medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, (Plaintiff)'s statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

However, to the extent that it is alleged that (Plaintiff) cannot perform work at an (sic) light exertional

---

[2] Keppra (Levetiracetam) is used in combination with other medications to treat certain types of seizures in people with epilepsy. NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION, U.S. LIBRARY OF MEDICINE, www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001067.

level, the ALJ finds those allegations are not totally credible for the following clear and convincing reasons.

First, (Plaintiff) is able to perform activities of daily living such as her personal hygiene, washing dishes, vacuuming, light cooking, laundry and she takes care of her finances.

Second, (Plaintiff) said she was not sure of her compliance with her medication. She reported compliance with Dilantin[3/] for one year and her seizures stopped. When she was non-compliant with Dilantin she ended up in the emergency room. (Plaintiff) started back taking her medication after she was admitted into the hospital with a seizure.

Third, two days after her last visit to the emergency room for non-compliance with her medication, she had another seizure for non-compliance and was back in the emergency room. Dr. Maze reported on October 3, 2006, (Plaintiff's) seizures are under control when she takes her medication regularly.

Fourth, treatment records from UCSD Medical Center reveal (Plaintiff) was instructed to keep a seizure diary and return with it two months later to alter her anti-seizure therapy.

Fifth, in August 2007, (Plaintiff) was doing well since taking Keppra.

Sixth, in October 2007, (Plaintiff) had good control of her gout and she had no seizures for a while.

Seventh, on September 18, 2008, treatment records from Mid-City Community Clinic reported (Plaintiff) was off her medications for six months.

Consequently, (Plaintiff's) allegations are not credible to establish a more restrictive residual functional capacity than that found above.

Alan E. Cummings, Ph.D., a vocation expert testified to his thorough review of the vocational records. At the hearing, the vocation expert classified (Plaintiff)'s past relevant work as a day care worker as semi-skilled

---

[3/] Dilantin (Phenytonin) is used to control certain types of seizures, and to treat and prevent seizures that may begin during or after surgery to the brain or nervous system. NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION, U.S. LIBRARY OF MEDICINE, www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000549.

work performed at a light level of exertion, and a sandwich maker as unskilled work performed at the medium level of exertion according to the Dictionary of Occupational Titles. Dr. Cummings then considered a question involving a hypothetical individual with (Plaintiff's) testimony and past relevant work experience. He replied that such an individual is not able to perform her past relevant work.

6. (Plaintiff) is unable to perform her past relevant work as a day care worker and as a sandwich maker because her potential for a seizure would jeopardize both jobs. Accordingly, (Plaintiff) is unable to perform past relevant work.

7. (Plaintiff) was born on November 16, 1957 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. (Plaintiff) has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not (Plaintiff) has transferable job skills.

10. Considering (Plaintiff's) age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that (Plaintiff) can perform.

In determining whether a successful adjustment to other work can be made, the undersigned must consider (Plaintiff)'s residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocation Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If (Plaintiff) can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon (Plaintiff)'s specific vocational profile. When (Plaintiff) cannot perform substantially all of the exertional demands at a given level of exertion and/or has nonexertional limitations, the med ical-vocational rules are used as a framework for the additional exertional and/or nonexertional limitations. If (Plaintiff) has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking.

If (Plaintiff) had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, (Plaintiff)'s ability to perform all or

substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitation erode the unskilled light occupational base, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with (Plaintiff)'s age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as an assembler, DOT No. 731.687-034, classified as unskilled, light exertional level with 2,000 in the local economy and 60,000 in the national economy, a (sic) inspector, DOT No. 727.687-066, unskilled, light exertional level with 3,000 in the local economy and 92,000 in the regional economy and a packager, DOT No. 559.687-074, classified as unskilled, light exertional level with 4,000 in the local economy and 442,000 in the regional economy.

Pursuant to SSR 00-4p, the vocational expert stated his testimony was based upon and consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the (ALJ) concludes that, considering (Plaintiff's) age, education, work experience, and residual functional capacity, (she) is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule (sic).

11. (Plaintiff) has not been under a disability, as defined in the Social Security Act, from September 23, 2004 through the date of this decision.

IV

STANDARD OF REVIEW

A district court may only disturb the Commissioner's final decision "if it is based on legal error or if the fact findings are not supported by substantial evidence." Sprague v. Bowen, 812 F.2d 1226, 1229 (9th Cir. 1987); ***see*** Villa v. Heckler, 797 F.2d 794, 796 (9th Cir. 1986). The court cannot affirm the Commissioner's final decision simply by isolating a certain amount of supporting evidence. Rather, the court must examine the administrative record as a whole. Gonzalez v.

Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990). Yet, the Commissioner's findings are not subject to reversal because substantial evidence exists in the record to support a different conclusion. See, e.g., Mullen v. Brown, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993); see Thompson v. Schweiker, 665 F.2d 936, 939 (9th Cir. 1982). The Commissioner's decision must be set aside, even if supported by substantial evidence, if improper legal standards were applied in reaching that decision. See, e.g., Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978).

V

SUMMARY OF APPLICABLE LAW

Title II of the Social Security Act (hereinafter, "Act"), as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from physical or mental disability. 42 U.S.C. § 423(a)(1)(D). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a). Both titles for the Act define "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months…" Id. The Act further provides that an individual:

> … shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

> whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(a).

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two.

Step two determines whether the claimant has a medically severe impairment or combination of impairments. That determination is governed by the "severity regulation," which provides in relevant part:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activites, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. §§ 404.1520(c), 416.920(c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;: "[c]apacities for seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]responding appropriately to supervision, co-workers, and usual work situations;" and "[d]dealing with changes in a routine work setting." Id. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to step three.

Step three determines whether the impairment is equivalent to one of a number of listed impairments that the secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairments meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to step four.

Step four determines whether the impairments prevent the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his previous work, the evaluation proceeds to step five.

Step five, the final step of the process, determines whether he is able to perform other work in the national economy in view of his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

VI

DISCUSSION

A. THE ALJ PROVIDED LEGALLY SUFFICIENT REASONS FOR REJECTING PLAINTIFF'S TESTIMONY

Plaintiff argues that the ALJ improperly assessed her subjective symptoms and failed to articulate clear and convincing reasons for rejecting her testimony. Defendant contends that the ALJ provided sufficient reasons for rejecting the Plaintiff's claims.

An ALJ must consider all of a claimant's statements about symptoms including pain, but such statements are not alone conclusive evidence of disability. 20 C.F.R. §§ 404.1529(a) and 416.929(a) (2012). An ALJ cannot be required to believe every allegation of disability; but is

however, required to make specific credibility findings. See Fair v. Bowen, 885 F. 2d 597 (9th Cir. 1989); See also Social Security Ruling (SSR) 96-7p (credibility finding "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weights the adjudicator gave to the individual's statements and the reason for that weight"). An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that he did not "arbitrarily discredit" a claimant's subjective testimony. See Thomas v, Barnhart, 278 F. 3d 947, 958 (9th Cir. 2002).

Here, Plaintiff testified that she has trouble standing, that she has seizures in her sleep, uses a walker, and needs assistance while showering (Tr. 28-29). However, the ALJ noted that Plaintiff performed numerous daily activities, including taking care of personal hygiene, washing dishes, sweeping, light cooking, and doing laundry (Tr. 18). The ALJ observed that these activities belied Plaintiff's claim that she could not perform light work activity (Tr. 18). See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that an ALJ may consider many factors in weighing a social security claimant's credibility, including the claimant's daily activities). The ALJ properly inferred that because Plaintiff could sweep, do laundry, and wash dishes, she could perform light work activity (Tr. 18).

Plaintiff's claim for disability benefits is further weakened by her non-compliance with prescribed medication (Tr. 18). The ALJ noted that when Plaintiff was non-compliant with her prescribed treatment, she ended up in the emergency room (Tr. 18). The ALJ further noted that a consultative examiner reported on October 2, 2006, that Plaintiff's seizures were under control when she took her medication regularly, and that in August 2007, Plaintiff was doing well since taking Keppra (Tr.

18). Impairments that are amenable to control cannot be a basis for disability. Warre v. Commissioner of Social Security Administration , 439 F.3d 1001, 1006 (9th Cir. 2006), citing Odle v. Heckler , 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication).

Since an ALJ may disregard unsupported, self-serving statements, and due to Plaintiff's activities of daily living, Plaintiff's non-compliance with prescribed medication, despite the medication's positive effect, the ALJ properly found that Plaintiff's alleged impairments were not as severe as alleged.

B. THE ALJ ERRED IN FAILING TO REJECT OR CONSIDER LAY WITNESS TESTIMONIAL EVIDENCE, BUT THE ERROR WAS HARMLESS.

Plaintiff argues that the ALJ erred in ignoring the testimony of the Plaintiff's mother, Dorothy Evans ("Evans"). Defendant contends that even if the ALJ erred, such error was harmless.

Ms. Evans briefly testified that her daughter had seizures but had difficulty recalling when the seizures had occurred (Tr. 53). She asserted that Plaintiff had seizures which occurred during her sleep; however, she had never witnessed this and only based her testimony on hearsay statements from Plaintiff (Tr. 52-53). She also asserted that Plaintiff had a memory problem (Tr. 50-51).

Generally, in evaluating a claimant's disability, the ALJ must consider the testimony of lay witnesses. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); see also Social Security Ruling (SSR) 96-8p (ALJ must consider the record as a whole including lay evidence). Particularly in cases where a claimant alleges pain or other symptoms that are not supported by medical evidence in the file, the ALJ must obtain detailed descriptions of daily activities by directing specific

inquiries about the pain and its effects to third parties who would be likely to have such knowledge. Dodrill, 12 F.3d at 919.

The ALJ did not offer any reason to disregard Dorothy Evans' description of Plaintiff's limitations. In fact, the ALJ's decision is void of any statements that the ALJ actually considered Ms. Evans' testimony. Such failure to articulate a rationale is error. However, this Court disagrees with the Plaintiff that such error warrants remand.

The Ninth Circuit has held that an ALJ's failure to address a lay witness's statements was harmless error and did not warrant remand. Ukolov v. Barnhart, 420 F.3d 1002, 1006 fn. 6 (9th Cir. 2005) ("Because the testimony of the lay witnesses encompassed only symptoms, any failure of the ALJ to adequately address that testimony does not affect the outcome of this case"). A reviewing court can consider an error harmless when an ALJ fails to properly discuss competent lay testimony favorable to the claimant when it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. See Stout v. Commissioner, 454 F.3d 1050, 1053-56 (9th Cir. 2006). Friends and family members who are in a position to observe the claimant's symptoms daily are considered to be "competent" to testify to the claimant's condition. Dodrill, F.3d at 918.

In the present case, Evans' testimony was inconsistent with the treatment reflected in Plaintiff's medical record and the effectiveness of treatment when Plaintiff was compliant with her medications. Evans testified that her daughter needed help because of a mental impairment (Tr. 50-51), which is the primary impairment Plaintiff alleges prevents her from working (Tr. 39). However, Plaintiff did not provide objective medical evidence of her alleged mental impairment. When Plaintiff was

asked by the ALJ why she believed her memory was more impaired than it was previously, Plaintiff responded it was because of her stroke (Tr. 39). However, Plaintiff's stroke occurred in 2002, prior to the ALJ determination in 2004 that she was not disabled (Tr. 63). Neither Plaintiff nor Evans alleged an intervening stroke or other event that would cause Plaintiff's memory to deteriorate further. Indeed, according to the medical records, Plaintiff's mental status had actually improved from a limitation to simple, repetitive work, to no medically determinable impairment. (Tr. 76, 336). In short, there was no evidence to support Evans' testimony, nor Plaintiff's testimony, that Plaintiff was disabled because of poor memory. Accordingly, Evans' testimony was unsupported. Therefore, Plaintiff's contention that the case warrants remand because the ALJ failed to discuss the Evans' testimony fails.

Accordingly, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.

VII

CONCLUSION AND RECOMMENDATION

After a review of the record in this matter, the undersigned Magistrate Judge RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. §¤ 636(b)(1).

IT IS ORDERED that no later than March 26, 2012, any party to this

action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than April 13, 2012. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 27, 2012

Hon. William V. Gallo
U.S. Magistrate Judge